UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NUMBER: 08-140** |
| **RENEE GILL PRATT** | **SECTION: "B"(1)** |

## ORDER AND REASONS

Defendant's opposed motion for bail pending appeal is **GRANTED**, in limited part as noted below. See, Record Document Numbers 782, 783, 785 and 786.

Under the 1984 Bail Reform Act, a convicted defendant has the burden of establishing the following four factors in order to obtain release on bail pending appeal:

(1) that the defendant is not likely to flee or pose a danger to the safety of any other person or the community if released;

(2) that the appeal is not for purpose of delay;

(3) that the appeal raises a substantial question of law or fact; and

(4) that if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed.

See *U.S. v. Giancola, et al*, 754 F.2d 898; 901 (11th Cir. 1985); *U.S. v. Miller*, 753 F. 2d 19, 24 (3rd Cir. 1985); and *U.S.*

*v. Valera-Elizondo*, *et al*, 761 F.2d 1020 (5th Cir. 1985).

Without objection, Defendant has clearly satisfied, in her favor the first two factors. At issue is whether she has met her burden in establishing factors **(3)** that the appeal raises a substantial question of law or fact; and **(4)** that if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed.

The 1984 Bail Reform Act places the burden on a convicted defendant to overcome the presumed correctness of their conviction. *U.S. v. Valera-Elizondo*, et al, 761 F.2d 1020, 1023 (5th Cir. 1985); see S. Rep. No. 225, 98th Cong., 1st Session 26 (1983), *Reprinted in* 1984 U.S. Code Cong. & Ad. News 3209. "'[A]defendant seeking bail on appeal must show that his or her appeal has more merit than under the discarded "frivolous" test, but...the court [still has] discretion to give bail in those cases, which will consequently be considered reduced in number, where [a] defendant can meet the criteria.'" *Valera-Elizondo*, *Id.* at 1023, quoting *U.S. v. Miller*, 753 F.2d 19, 23-24 (3rd Cir. 1985) and *U.S. v. Giancola*, 754 F.2d 898 (11th Cir. 1985).

In *Giancola*, the Eleventh Circuit defined "substantial question" as "one of more substance than would be necessary to a finding that it was not frivolous...It is a 'close' question or one

that very well could be decided the other way...Furthermore, whether a question is substantial must be determined on a case-by-case basis." *Giancola*, 754 F.2d at 901. *Giancola* and the Fifth Circuit in *Valera-Elizondo* approvingly quoted the Third Circuit's *Miller* opinion which stated, in pertinent part, "the proper interpretation of section 3143(b)(2) requires ...determinations... that the question raised on appeal is substantial...which is fairly doubtful...[and] whether that issue is sufficiently important to the merits that a contrary appeal ruling is likely to require reversal or a new trial." *Valera-Elizondo*, 761 F.2d at 1023, *quoting Miller*, 753 F.2d at 23-24 and *Giancola*, 754 F.2d at 898-901. The Fifth Circuit also cited *U.S. v.* Handy, 753 F. 2d 1487 (9th Cir. 1985), as agreeing with the *Miller* interpretation, stating that "<u>substantial defines the **level** of merit of the question presented and 'likely to result in reversal or an order for a new trial' defines the **type** of question that must be presented.</u>" (Emphasis in original or added) *Valera-Elizondo*, 761 F.2d at 1024. "The *Handy* Court then held that "the statute simply requires the defendant to demonstrate the existence of a substantial question or "fairly debatable" question of the type that calls into question the validity of the judgment." *Valera-Elizondo*, 761 F.2d at 1024, *quoting Handy*, 753 F. 2d at 1490.

As emphasized by the Fifth Circuit, defendant's burden is to show a substantial chance of prevailing, <u>not</u> a probability that the

particular question under factor (3) of the statute will be decided in defendant's favor. *Valera-Elizondo*,761 F.2d at 1025, fn. 8. "To recapitulate, this Court adopts the *Miller* interpretation of section 3143(b), subject to the *Giancola* Court's and this Court's additional observations on the definition of a 'substantial question.' In addition, we assign to 'likely' [to result in reversal or new trial under factor (4)] its ordinary meaning of 'more probable than not'." *Id*. at 1025; [Added for clarify].

Guided by the Fifth Circuit 's various interpretations and observations, we find that defendant raises substantial questions, in the following areas, that if decided on appeal in her favor would likely result in reversal of conviction or a new trial:

- A. Use of general verdict form that did not ask which type or types of racketeering activity the defendant conspired to commit; <u>and</u>
- B. Introducing office rental payments as evidence in furtherance of the RICO conspiracy where such payments were approved to be made by the appropriate reviewing governmental authorities; <u>and</u>
- C. Jury selection process.

At trial, the Government relied heavily upon the substantial increase in rental payments for defendant's legislative offices to a co-conspirator to show defendant's complicity in a broad and sweeping set of activities, including mail fraud. Evidence of such

payments were admitted, amongst other evidence, to show the agreement to form a RICO enterprise, the Defendant's agreement to be associated with the enterprise, and the agreement to engage in a pattern of racketeering activity. According to witnesses called by the Government, the rental agreements and subsequent rental payments were approved by officials with the respective governmental units in accordance with state and local regulations. According to the indictment, the rental payments were made to the "enterprise's for-profit company Southwind, which was organized in third party names in order to create an appearance of legitimacy;...and collecting rent money from a non-profit that actually owned the building...". The Government contends that the "jury unequivocally rejected 'defense contentions that the rental payments were perfectly legitimate'". Quotes from Record Document Numbers 785, p. 10 and 782-1 p. 6. On the other hand, Defendant points out that due to the general verdict form, courts can only guess to what extent, if any, the jury relied upon the rental evidence to reach its verdict. Undoubtedly, that evidence was material to the Government's case. Considering such evidence and the verdict form, Defendant has raised for appeal a substantial question of fact and law that if decided in her favor would likely lead to a reversal or new trial.

Arguably, a ruling could have gone either way on the *Batson* objections to the Government's use of preemptory challenges to

strike five of the six qualified African-American jurors. One African-American juror and two African-American alternate jurors were ultimately selected to serve on the trial jury. Similarly, a substantial question could be raised on whether the jury selection process was unduly tainted by the extensive pretrial publicity involving this case, the conviction after trial of alleged co-conspirator Mose Jefferson, in a separate case, involving the same-named computer program as in this case, and conviction after trial of former Congressman William Jefferson, brother of Mose and Betty Jefferson. He facilitated the donations of the so-called "Katrina" cars and equipment by Daimler-Chrysler that was used by the enterprise's non-profits, and subsequently used by the Defendant and Mose Jefferson for their personal benefit, according to the Government's evidence and argument. Interestingly however, as also noted by the Government, defense counsel did not reurge a motion to change venue due to pretrial publicity for the re-trial. Such a motion was filed prior to the first trial and denied. Record Document Numbers 269 and 292. Even assuming that the defense felt another such motion was fruitless due to the ruling on the first motion, we cannot ignore the specter of a claim being raised for counsel ineffectiveness on this point. Defense counsel did preserve its challenge to the jury venire in a motion to quash same prior to the re-trial, Record Document Number 705. Also, while not raised by either side, but further complicating the issue of jury

fairness is the period of time it took this 12-person jury to render verdicts on the RICO conspiracy count and the forfeiture charge. This Court still finds that the selected trial jury was attentive, fair and reasonable at all pertinent times. However, in this ten day trial, the jury deliberated during a working lunch from 12:29 p.m. until 2:39 p.m. to return its verdict on the RICO conspiracy. Later that same day, the jury deliberated from 3:57 p.m. to 4:55 p.m. before reaching its forfeiture verdict. See, Record Document Number 727. While this Court finds the selection and deliberative processes of the jury were done within permissible constitutional and statutory limits, the confluence of above noted factors would still raise substantial questions of fact and law for appellate purposes. Moreover, a favorable appellate ruling for the defendant on the jury issues would likely cause reversal of the conviction and a new trial.

The six other grounds for appeal raised by Defendant's motion are neither substantial nor likely to lead to a reversal of conviction or new trial. For instance, the indictment, with the inclusion of superfluous evidentiary language, sufficiently charges a RICO conspiracy under section 1962(d). *See U.S. v. Salinas*, 522 U.S. 52 (1997); *U.S. v. Delgado*, 401 F. 3d 290 (5th Cir. 2005); *U.S. v. Glecier*, 923 F. 2d 496 (7th Cir. 1991). Moreover, the jury instructions gave detailed and clear instructions on the elements that must be proven beyond a reasonable doubt to sustain a

violation of the RICO conspiracy statute.  Further, while the Court did not give the defendant's requested theory of the defense instruction verbatim, the instructions effectively present her defense theory.  Record Document Number 727-2 p. 16, *et seq*.  Lastly, Defendant's sentencing objection may raise a substantial question of fact and law, but it fails to show how any incorrect sentence would likely cause reversal of a conviction or a new trial.  In any event, re-sentencing would likely lead to an imprisonment term, using Defendant's suggested sentencing calculations, that would still exceed the time taken to process the appeal.

Accordingly, the motion for bail pending appeal is **GRANTED** for assigned reasons above.  The Government is granted leave to file within 14 days a motion for amended bail and supervision conditions pending appeal.  Further, the Government may seek appellate review of this decision in accordance within applicable law and timelines.

New Orleans, Louisiana, this 15th day of December, 2011.

_____
UNITED STATES DISTRICT JUDGE